**Ntchwaidumela BEY and Ajama Jabari Bey, Plaintiffs–Appellants,**

**Michael Flynn, Agnes Bey, Albert Kelly, Wayne Bollinger Bey, and Zamah El, Plaintiffs,**

v.

**CITY OF NEW YORK, New York City Department of Corrections, Rudolph Giuliani, individually and as Mayor of New York City and Bernard B. Kerik, Individually and as Commissioner of the New York City Department of Corrections, Defendants–Appellees,**

**Daily News, Intervenor–Plaintiff.**

No. 05–5262–cv.

United States Court of Appeals, Second Circuit.

Dec. 19, 2006.

Irene Donna Thomas, Thomas & Associates, Brooklyn, N.Y., for Plaintiffs–Appellants.

Mordecai Newman, Assistant Corporation Counsel of the City of New York (Larry A. Sonnenshein, Assistant Corporation Counsel, of counsel, Michael A. Cardozo, Corporation Counsel of the City of New York, on the brief), for Defendants–Appellees.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon. CHESTER J. STRAUB, Circuit Judges, Hon. SIDNEY H. STEIN, District Judge.[1]

### SUMMARY ORDER

Plaintiffs–Appellants Ntchwaidumela Bey and Ajama Jabari Bey appeal from orders of the District Court for the Southern District of New York (Allen G. Schwartz, *Judge,* and Thomas P. Greisa, *Judge)* granting summary judgment to defendants and dismissing plaintiffs' claims for violations of the First and Fourteenth Amendments to the United States Constitution, and of New York state and city anti-discrimination laws. We assume the parties' familiarity with the facts, procedural history, and issues on appeal. For the following reasons, we affirm the District Court's denial of plaintiffs' motion to strike, but we vacate the District Court's grant of summary judgment to defendants, and remand for further proceedings.

Plaintiffs' claims arise out of the termination of their employment as corrections officers for the New York City Department of Corrections ("DOC"), following an internal investigation in which more than 1,000 employees of DOC, including plaintiffs, were discovered to have been filing false tax documents. Approximately 70 of those employees were arrested and criminally prosecuted; those who were convict-ed were automatically terminated from their employment with DOC. Of those employees who were not arrested and criminally charged, the Inspector General of the DOC, Michael Caruso, recommended that 21 be terminated. Plaintiffs are members of that group of 21. Following an administrative trial before the New York City Office of Administrative Trials and Hearings, at which it was determined that plaintiffs had "wilfully filed false tax documents with the intent to defraud the city and State of their income tax contributions," plaintiffs were terminated. All of the 21 non-arrested employees recommended for termination, including plaintiffs, either profess to be members of the Moorish–American faith, or, in the case of plaintiff Michael Flynn, to have been falsely identified by DOC as a member of that faith.[2] All of the 21 submitted documents to DOC, in support of their false tax filings, in which they asserted that they were Moors.

Plaintiffs raise a variety of claims under the First and Fourteenth Amendments, and under state and municipal law, but the essence of their case is that DOC singled them out for selective enforcement of discipline because of their adherence to the Moorish faith, and that DOC thereby unlawfully discriminated against them on the basis of race or religion, and burdened their right to freedom of association.

In order to prevail on a selective enforcement claim, plaintiffs must demonstrate that (1) they were selectively treated compared with others similarly situated, and (2) such selective treatment was based on impermissible considerations, such as race or religion, or the

---

1. The Honorable Sidney H. Stein, District Judge for the Southern District of New York, sitting by designation.

2. A number of other non-arrested DOC employees were disciplined subsequently, two or more years after plaintiffs and the rest of the group of 21 were disciplined.

intent to inhibit the exercise of constitutional rights, or a malicious or bad faith intent to injure a person. *See Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir.2001); *LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994). "[A] showing that the plaintiff was treated differently compared to others similarly situated" is a "prerequisite" and a "threshold matter" to a selective enforcement claim. *Church of the Am. Knights of the KKK v. Kerik*, 356 F.3d 197, 210 (2d Cir.2004). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000); *see also LaTrieste Rest. & Cabaret Inc.*, 40 F.3d at 590 (holding that summary judgment was not proper where "[t]he evidence clearly raises a question of material fact that the eventual enforcement [of a zoning ordinance] was intended to inhibit the exercise of a constitutional right.").

The District Court, on summary judgment, found that plaintiffs were similarly situated only to the rest of the group of 21 disciplined Moorish employees, and not to any non-disciplined DOC employee, for two reasons.

First, the District Court noted that "[u]nlike the others ... who were not recommended for termination, plaintiffs did not merely submit forms or other papers in support of their claimed [tax] exemption. They asserted that they were not subject to arrest, or that they were immune from taxation and the jurisdiction of the United States, or that they were not citizens of the United States, or some combination of the above." We note, however, that a number of other employees, who did not claim to be Moors and were not subject to the same discipline as the group of 21, submitted documents making similar claims—*e.g.*, "I was not born in a territory over which the United States is Sovereign and I am, therefore, not subject to its jurisdiction and I am not a citizen of the United States," or "To Whom It May Concern; The purpose of this letter and the attached affidavits incorporated herein is to give you ... constructive LEGAL NOTICE of my election to ... EXPATRIATE from the jurisdiction of the federal United States."

■ Defendants argue that the claims made by non-Moorish employees may be distinguished from the claims made by the Moors on the ground that the non-Moors claimed only to be immune from the laws of the United States, while the Moors claimed to be immune from the laws of United States and New York alike. This distinction is too fine to support a grant of summary judgment for defendants. A jury might reasonably find the distinction to be trivial or illusory, and might therefore find the disciplined Moorish employees to be similarly situated to a number of non-disciplined employees. Moreover, there is evidence in the record that, viewed in the light most favorable to plaintiffs, could support a finding that DOC deliberately singled out the Moors *qua* Moors for selective discipline—*e.g.*, the various lists of identified Moors kept by Caruso during the investigation. A jury might reasonably find that the fine distinction asserted by defendants is a mere pretext for an animus against the Moors, on the basis of their professed faith.

■ Second, the District Court noted that "each of the plaintiffs submitted some form or other paper indicating a link to a dangerous group known as the Great Seal Association of Moorish Affairs." Defendants argue that DOC was justified in focusing on the 21 Moors—*i.e.*, that the Moors were not similarly situated to any non-Moor—because of security concerns surrounding the Great Seal. These con-

cerns appear to rest on a single 1996 memorandum issued by the New York Police Department, titled "Heightened Security Alert on Car Stops Involving 'Moorish National' License Plates." The memo warns that N.Y.P.D. officers should be careful when dealing with "members of a group, known as 'The Great Seal Association of Moorish Affairs,' [who] have been previously arrested and are suspected of armed robberies and trafficking in high-powered automatic weapons," and that officers should be wary of members of that group offering "official-looking documents" claiming "diplomatic immunity." The memorandum is only one page long. It contains no further details on the Moors, or on the Great Seal. It does not mention any plaintiff, or any other person, by name.

On the basis of this memorandum, the District Court found that the Great Seal was a "dangerous" and "non-religious" group. The District Court found that plaintiffs had failed to show that the assertedly religious group to which plaintiffs belonged was "in fact different or separate" from the criminal group identified in the memorandum. Accordingly, the District Court found the "evidence . . . overwhelming that plaintiffs were selected for discipline . . . because the DOC reasonably believed that they were affiliated with a dangerous non-religious group." Once again, we think that these are not issues that may properly be resolved on summary judgment, given the paucity of information presently in the record to substantiate defendants' security concerns. The nature of plaintiffs' affiliation with the Great Seal is unclear. Moreover, whether the Great Seal is a narrow criminal conspiracy, such that any association with it by plaintiffs may raise reasonable and legitimate security concerns, or whether it is a broader religious or political association or organization of which only a small minority of members are involved in criminal

activity, so that plaintiffs may not reasonably be tarred with the brush of the activities of some of their co-religionists, are questions of fact which are by no means overwhelmingly clear from this record. The questions of both the reasonableness and the sincerity of DOC's asserted security concerns are matters for further factual development, or for a jury to determine.

We therefore vacate the District Court's grant of summary judgment with respect to plaintiffs' equal protection claims. For similar reasons, the District Court erred in granting summary judgment to defendants on plaintiffs' claim that defendants violated their First Amendment right to freedom of association. If plaintiffs are able to demonstrate to the finder of fact that DOC singled them out for special discipline because of their religion, they may be able to demonstrate a violation of their First Amendment rights.

■ Plaintiffs also challenge the District Court's denial of plaintiffs' motion to strike various items of evidence, which plaintiffs contend are irrelevant, or inadmissible for due process reasons. We see no error in the District Court's decision on this point. Evidence of the contemporaneous treatment of arrested employees, and the non-contemporaneous discipline meted out to other non-arrested employees, may, as plaintiffs argue, be of somewhat limited relevance, for one reason or another, but is clearly not irrelevant. Evidence of defendants' alleged security concerns regarding plaintiffs is relevant to explain defendants' apparent focus of their enforcement efforts on plaintiffs. The fact that these security concerns were not raised at plaintiffs' OATH hearing—where they were not charged with any wrongdoing other than that they had filed false tax forms, and violated their oaths of office by disclaiming their citizenship—is beside the point.

Finally, plaintiffs challenge the District Court's denial of their motion for a continuance of discovery pursuant to Rule 56(f). Given our present resolution of this appeal, we will not address this issue. However, on remand, plaintiffs should have another opportunity to move for further discovery, indicating the facts sought and how those facts are reasonably expected to raise a genuine issue of material fact. *See Gualandi v. Adams,* 385 F.3d 236, 244–45 (2d Cir.2004).

We have considered all the parties' arguments. For the foregoing reasons, we VACATE the District Court's grant of summary judgment to defendants, we AFFIRM the District Court's denial of plaintiffs' motion to strike, and we REMAND for further proceedings consistent with this order.